IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| NEIL ZLOZOWER, | |
| *Plaintiff,* | Case No: 1:24-cv-01817-CAB |
| v. | JUDGE CHRISTOPHER A. BOYKO |
| ROCK AND ROLL HALL OF FAME AND MUSEUM, INC., | MAGISTRATE JUDGE JENNIFER DOWDELL ARMSTRONG |
| *Defendant.* | JURY TRIAL DEMAND |

**FIRST AMENDED COMPLAINT**

Plaintiff Neil Zlozower ("*Plaintiff*"), by and through his undersigned counsel, for his First Amended Complaint against defendant Rock and Roll Hall of Fame and Museum, Inc. ("*Defendant*") states and alleges as follows:

**INTRODUCTION**

1. This action seeks to recover damages for copyright infringement under the Copyright Act, 17 U.S.C §101 *et seq*.

2. Plaintiff created a photograph of American rock band Van Halen ("*Photograph 1*") in which Plaintiff owns the rights and licenses for various uses including online and print publications.

3. Plaintiff also created a photograph of the musician of Edward Lodewijk Van Halen, considered one of the most influential and innovative guitarists of all time ("*Photograph 2*").

4. While Defendant self-describes itself as a not-for-profit museum located in Clevland, Ohio (the "*Museum*"), the Rock and Roll Hall of Fame is a tourist attraction for which patrons must pay an admission fee ($35 for adults and $25 for youth ages 6–12) to gain access.

5. Defendant charges admission despite generating a profit each year from its operations. For example, in 2023, Defendant had reported revenues of $54,810,546 dollars and

1

reported expense of $27,827,844 dollars generating a net income of $26,987,702 on $188,303,733 in net assets. See https://projects.propublica.org/nonprofits/organizations/341520995/202432489349300643/full. In 2023, Greg Harris, the CEO of Defendant, earned $801,003 in salary and $103,820 in additional compensation from his employment by Defendant. *Id.*

6. In 2022, Defendant had reported revenues of $43,897,385 dollars and reported expense of $26,971,448 dollars generating a net income of $16,925,937 on $155,585,704 in net assets. *Id*. In 2022, Greg Harris, the CEO of Defendant, earned $852,082 in salary and $103,237 in additional compensation from his employment by Defendant. *Id.*

7. Defendant's business is very profitable.

8. Defendant, without permission or authorization from Plaintiff, actively copied and displayed Photograph 1 and 2 (collectively "*Photographs*") in the Museum and engaged in this misconduct knowingly and in violation of the United States copyright laws.

## PARTIES

9. Plaintiff is an individual who is a citizen of the State of California and maintains a principal place of business in Los Angeles County, California.

10. Upon information and belief, Defendant is an Ohio corporation with a principal place of business at 1100 Rock and Roll Blvd, Cleveland in Cuyahoga County, Ohio.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over the federal copyright infringement claims pursuant to 28 U.S.C. §1338(a) and 28 U.S.C. §1331.

12. This Court has personal jurisdiction over Defendant because it maintains its principal place of business in Ohio.

13. Venue is proper under 28 U.S.C. §1391(b)(2) because Defendant does business in this Judicial District and/or because a substantial part of the events or omissions giving rise to the claim occurred in this Judicial District.

**FACTS COMMON TO ALL CLAIMS**

**A.    Plaintiff's Copyright Ownership**

14.    Plaintiff is a professional photographer by trade who is the legal and rightful owner of certain photographs which Plaintiff commercially licenses.

15.    Plaintiff is a renowned rock photographer with a career spanning over 55 years, capturing legendary bands like The Rolling Stones, Van Halen, Guns N' Roses, and Mötley Crüe, Michael Jackson, Led Zeppelin, KISS, David Bowie, Tom Petty, Red Hot Chili Peppers, Tina Turner, Eric Clapton.

16.    Starting at age 14, Plaintiff's iconic images have graced over 800 magazine covers and countless album sleeves.

17.    Plaintiff has published six photography books, including Van Halen: A Visual History and Six-String Heroes, showcasing his deep connection to rock and roll.

18.    Plaintiff's 2005 world premiere exhibit at Musichead Gallery was a milestone that highlighted his incredible influence on rock photography and solidified his legacy as one of rock's most iconic and collectible photographers.

19.    Plaintiff has invested significant time and money in building Plaintiff's photograph portfolio.

20.    Plaintiff has obtained active and valid copyright registrations from the United States Copyright Office (the "*USCO*") which cover many of Plaintiff's photographs while many others are the subject of pending copyright applications.

21.    Plaintiff's photographs are original, creative works in which Plaintiff owns protectable copyright interests.

22.    Plaintiff is the author of both Photographs and responsible for their publication. Copies of the Photographs are attached hereto collectively as Exhibit 1.

23.    In creating the Photographs, Plaintiff, through hard work and effort, first had to establish the trust of the Van Halen band in order to be asked by them to perform a photo shoot at Sunset Sound recording studio.

24. Plaintiff would not have been invited into the inner sanctum of Van Halen's studio sessions or backstage areas, which was necessary to create the Photographs, without a personal and extensive investment of time and energy to gain the band's confidence and trust.

25. Prior to being requested to create the images, Plaintiff had already shot three of their live shows (San Diego (1978), Long Beach (1978) and a Bill Graham "Day on the Green" in Oakland (1978)) and an offstage photo session with the band backstage in Oakland before they went onstage.

26. Plaintiff's hope in creating the images would be to portray the band members as fun-loving, good-looking party band so that they could tease their fans before the release of their second album.

27. Plaintiff was the only photographer asked and/or allowed to make the Photographs.

28. In creating the Photographs, Plaintiff personally selected the subject matter, framing, timing, lighting, angle, perspective, depth, lens and camera equipment used to capture the images making each and every artistic determination necessary for the creation of the works.

29. Plaintiff did not charge the band for the creation of the Photographs.

30. On January 31, 2017, the Photographs were registered by the USCO under Registration No. VA 2-042-825.

31. Plaintiff created the Photographs to document and memorialize the rock group Van Halen with the intention of them being for the purpose public distribution and display in various forms including but not limited to magazines covers, inside use, centerfolds, album covers, cd covers, advertisements for the equipment/musical instruments in the world, book covers and inside book usage, documentaries, movies, collector prints, songbook covers, VHS and DVD covers, publicity shots, advertising shots, authentication usage, billboards, Namm show full life size stand up images, for detailed reference to make miniature models of musicians, images on vinyl picture discs, tour programs, merchandising tee shirts/apparel, and various merchandising products,(bar stools, clocks, bed sheets and comforters, beverage mugs, guitar picks, trading cards, and buttons.

32. Plaintiff has also licensed images for museum usage including the Peterson

4

Automotive Museum, The Guitar Museum, The Drum Museum, National Museum of the American Indian as well as for use in textbooks and for educational purposes.

33. Plaintiff commercially licenses his work for various uses including music publications as well as his own educational photography books.

34. Defendant, museums, and art exhibitions are part of Plaintiff's licensing markets for his works.

B.  **Defendant's Infringing Activity**

35. Defendant is the registered owner of the Museum and is responsible for its content.

36. Defendant is the operator of the Museum and is responsible for its content.

37. The Museum is a key component of Defendant's popular and lucrative commercial enterprise.

38. Upon information and belief, Defendant is a sophisticated company which owns a comprehensive portfolio of physical and digital platforms and has advanced operational and strategic expertise in an industry where copyright is prevalent.

39. Upon information and belief, Defendant's staff have significant experience in copyright matters and are familiar with specific practices including the need to ensure that all of the works used in their exhibits have been properly licensed.

40. Upon information and belief, Defendant has not implemented adequate internal policies to verify copyright ownership before content use, indicating a gross negligence in legal compliance, which is essential for a company with Defendant's reach, capabilities, and level of sophistication.

41. Upon information and belief, Defendant's internal policies, if any, are either not designed to verify copyright ownership before content is used or are systematically ignored, indicating a willful, recurring disregard for copyright compliance.

42. Defendant's failure to adopt or effectively enforce internal copyright policies, if any, indicates *de facto* willful infringement.

43. Defendant displayed Photograph 1 ("*Infringement 1*") as part of an 8' tall exhibition

in the Museum (the "*Exhibition*"). A copy of a screengrab of the Museum including Photograph 1 is attached hereto as Exhibit 2.

44. Plaintiff first observed Infringement 1 on October 21, 2022.

45. Defendant further displayed Photograph 2 ("*Infringement 2*") as part of a placard in the Exhibition. Screengrabs of the placard in the Exhibition including Photograph 2 are attached hereto as Exhibit 2.

46. Plaintiff became aware of Infringement 2 upon Defendant's filing of its Answer *(see Dkt. No. 8-1)* to Plaintiff's initial complaint.

47. The Exhibition created by Defendant did not include any photo credit or mentions as to the source of the Photographs.

48. Despite knowing the source of the Photographs, Defendant did not at any time contact Plaintiff and request Plaintiff's permission to use the Photographs in the Exhibition.

49. Upon information and belief, the Exhibition was visited by thousands of people many of whom posed next to that Photographs who might have wanted to purchase a license to the image but without any photo credit, no one knew who shot the image and so no one could purchase a print to hang in their home or office or a license to use the image for a commercial purposes.

50. The Photographs were willfully and volitionally copied and displayed by Defendant without license or permission, thereby infringing on Plaintiff's copyrights in and to the Photographs (hereinafter the unauthorized uses set forth above are referred to as the "*Infringements*").

51. The Infringements are exact copies of critical portions of Plaintiff's original images that were directly copied and displayed by Defendant in the Exhibition.

52. Upon information and belief, Defendant engaged in the Infringements knowingly and in violation of applicable United States copyright laws.

53. Upon information and belief, Defendant received a financial benefit directly attributable to the Infringements.

54. A large number of people have viewed the unlawful copies of the Photographs in the Exhibition.

55. Defendant did not give any photo credit or attribution to Plaintiff as being the author of the Photographs despite claiming its Exhibition to be of historical relevance or significance.

56. Because of a lack of attribution as to the source of the Photographs by Defendant, none of the people viewing the images were made aware of their author and therefore are unaware of who to contact should they wish to obtain a license for their usage.

57. The failure to contact Plaintiff regarding the usage of his Photographs and the failure to provide attribution to Plaintiff in the Exhibition are each anathema to the mission statement and purpose of the Museum.

58. Defendant's failure to provide attribution, failure to contact the Plaintiff (artist) about the use of his Photographs, demonstrates Defendant's bad faith and lack of fair dealing.

59. Defendant's unlicensed usage of the Photographs was commercial in nature.

60. Defendant's usage of the Photographs added nothing new or transformative to the Photographs.

61. Defendant's secondary use of Plaintiff's Photographs functioned as no more than a gratuitous affectation to the Exhibition as Defendant already had sufficient material present to satisfy its intended purpose, including informational placards and a multimedia video to contextualize its exhibits.

62. Defendant's use was a non-transformative, commercial exploitation of the Photographs, insofar as Defendant's putative "transformation" did nothing more than display the images to identify what they depicted.

63. Defendant at all times had the ability to stop the reproduction and display of Plaintiff's copyrighted material.

64. Defendant's use of the Photographs harmed the actual market for the Photographs.

65. Defendant's use of the Photographs, if widespread, would harm Plaintiff's potential market for the Photographs.

66. On March 22, 2024, Plaintiff, via counsel, served a letter seeking to address the complaints contained herein concerning Defendant's infringement of Plaintiff's Photograph 1.

67. On May 21, 2024, Plaintiff, via counsel, served a second letter seeking to address the complaints contained herein concerning Defendant's infringement of Plaintiff's Photograph 1.

68. Despite Plaintiff's efforts and willingness to address Defendant's infringing activity Defendant failed to respond and Plaintiff was forced to seek judicial intervention for Defendant's infringing activity.

69. As a result of Defendant's misconduct, Plaintiff has been substantially harmed.

## FIRST COUNT
*(Direct Copyright Infringement, 17 U.S.C. §501 et seq.)*

70. Plaintiff repeats and incorporates by reference the allegations contained in the preceding paragraphs, as though set forth in full herein.

71. The Photographs are original, creative works in which Plaintiff owns a valid copyright.

72. The Photograph is properly registered with the USCO and Plaintiff has complied with all statutory formalities under the Copyright Act and under regulations published by the USCO.

73. Plaintiff has not granted Defendant a license or the right to use the Photographs in any manner, nor has Plaintiff assigned any of its exclusive rights in the copyright to Defendant.

74. Without permission or authorization from Plaintiff and in willful violation of Plaintiff's rights under 17 U.S.C. §106, Defendant improperly and illegally copied, reproduced, and publicly displayed works copyrighted by Plaintiff thereby violating one of Plaintiff's exclusive rights in its copyrights.

75. Defendant's reproduction of the Photographs and display of the Photographs constitutes willful copyright infringement.

76. Upon information and belief, Defendant willfully infringed upon Plaintiff's copyrighted Photographs in violation of Title 17 of the U.S. Code, in that Defendant used,

published, communicated, posted, publicized, and otherwise held out to the public for commercial benefit, Plaintiff's original and unique Photographs without Plaintiff's consent or authority, by using them in the Exhibition.

77. As a result of Defendant's violations of Title 17 of the U.S. Code, Plaintiff is entitled to an award of actual damages and disgorgement of all of Defendant's profits attributable to the infringements as provided by 17 U.S.C. § 504 in an amount to be proven or, in the alternative, at Plaintiff's election, an award for statutory damages against each Defendant for each infringement pursuant to 17 U.S.C. § 504(c).

78. As a result of the Defendant's violations of Title 17 of the U.S. Code, the court in its discretion may allow the recovery of full costs as well as reasonable attorney's fees and costs pursuant to 17 U.S.C. § 505 from Defendant.

## JURY DEMAND

79. Plaintiff hereby demands a trial of this action by jury.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests judgment as follows:

That the Court enters a judgment finding that Defendant has infringed on Plaintiff's rights to the Photographs in violation of 17 U.S.C. §501 *et seq.* and therefore award damages and monetary relief as follows:

    a. finding that Defendant infringed Plaintiff's copyright interest in and to the Photographs by copying and displaying it without a license or consent;

    b. for an award of actual damages and disgorgement of all of Defendant's profits attributable to the infringements as provided by 17 U.S.C. § 504(b) in an amount to be proven or, in the alternative, at Plaintiff's election, an award for statutory damages against each Defendant for each infringement pursuant to 17 U.S.C. § 504(c), whichever is larger;

    c. for an order pursuant to 17 U.S.C. § 502(a) enjoining Defendant from any further infringing use of any of Plaintiff's Photographs.

      d.      for costs of litigation and reasonable attorney's fees against Defendant pursuant to 17 U.S.C. § 505

      e.      for pre-judgment interest as permitted by law; and

      f.      for any other relief the Court deems just and proper.

DATED: July 10, 2025

**SANDERS LAW GROUP**

By: */s/ Craig Sanders*
Craig Sanders, Esq.
333 Earle Ovington Blvd, Suite 402
Uniondale, NY 11553
Tel: (516) 203-7600
Email: csanders@sanderslaw.group
File No.: 129753

*Attorneys for Plaintiff*